2019-1802. Is it Mr. McGaugin? Yes, your honor. Thank you. May it please the court. There are three issues I'd like to talk about today in my prepared comments. The sufficiency of the 2014 notice letters in providing actual notice to the MDL defendants, the error made by the district court in its ruling that identified products, if the infringement resulted as a result of the use of some functionality of Microsoft software, and finally some of the problems that I think would arise if the new standard that was articulated by the district court was adopted. The 2014 letter was addressed to Dell, not Microsoft, and it refers to, in general, Dell's laptops and tablets, and it doesn't say anything about Microsoft's inventions infringing. There's no notice. Well, I disagree. No notice to Microsoft. There is no notice to and what the issue is, is not whether we can, the plaintiff can collect damages from Microsoft, but whether the plaintiff can collect damages from defendant products, because part of the functionality required for the infringement arises through the use of Microsoft software. So, for example, there was not just the Dell letter. I thought you were appealing as to Microsoft and as to the OEMs. Well, we're appealing to, predominantly, to the issue of the OEM liability. Well, we're appealing, no, I don't believe so. I mean, I don't think there's any question. In fact, it's indicated in the original brief that Microsoft was not provided with notice and that Microsoft is not a party from which the plaintiff is looking to seek damages. This is an issue of whether or not the notice letters that were sent to Fujitsu, Dell, Asus, and the others allow Iron Oak to collect damages, at least in part, through the utilization of some Microsoft software. And that was one of the issues that was sought in a clarification of the district court's order, because if you look at the 2014 letters, you're absolutely correct, Judge Lori. The only way Microsoft is paying money here is through their agreements to indemnify them with these laptop makers. Yes. They're not paying you money directly. There would be no direct payment. That's correct, Ari, and that's why there's a dispute here, because Microsoft, and this is discussed in footnote four of the court's original opinion, Microsoft apparently has agreements that say, look, if your infringement arises in part, then you can look to us. So can we get to the letters? I mean, I'm not unsympathetic to your appeal, but this seems to me to be a very facts-based question of what specific notice your letters provide. And some of it may be I just don't understand how these automatic updates occur and who does them. But I'm looking, for example, we started off with the Dell letter at 122 in your chart, and tell me if this is a fair representation, but it seems like you repeat this language over and over. You talk about Dell selling computers and laptops in that first paragraph and about Dell uses various servers. It doesn't really say what the various servers are. And in the second paragraph, it says Dell remotely upgrades the operating software, and then I guess the rest goes on to talk about how that's done. That, I assume, is your main contention about why this remote patching is violated. Yes. When it says Dell upgrades and that Dell stores these software updates from servers, are you talking about Dell servers? In that example, Your Honor, there would be Dell servers that are used. So are you aware? OK. Yes. So Dell is using its own servers or servers at rent or whatever, servers it controls to upgrade operating software or whatever on its laptop. Yes, Your Honor. Are you aware how Microsoft software that's installed on Dell computers gets upgraded? Is it through the Dell servers or does Microsoft independently send its own patches? I think there's two ways that the Dell computers can be patched and updated. One is through Dell software communicating with a Dell server, and one is through Microsoft software operating on the Dell computer communicating with a Microsoft server. Isn't the second a problem for you with this notice letter because it doesn't seem to cover that? Well, I would say, Your Honor, and I'm going to make two points and then direct you to the second patent. One point is I think the issue that you may be raising is one of divided and joint infringement because in an example where a Dell – I don't think so. I think what I'm trying to get is you have very specific allegations of infringement here that it's Dell servers, Dell operating its servers to do the upgrades. It seems to me that if you had said more generally that Dell has operating systems installed that can be remotely patched and you didn't drill down to its Dell servers versus just any remote patching, that might be sufficient, which raises an odd circumstance to me that a more specific infringement letter, which is I think what everybody would prefer, somehow is not sufficient when a more general one might have been. Right, and I think you raise a very good point, and I'm going to contrast – I don't know what to do with that point because if I read this as only giving notice that it is Dell using its own servers and that's what it seems to say, then why does it give notice that – to even Dell that the remote patching done through the Microsoft server, which I think you agree is a completely different server and a different way of doing it, is covered by this. Well, I'd raise two points, and then I'm going to contrast that with the other patent that's issued. In this case, it's a 658 patent. If you look, for example, on the first patent where we're talking about kind of the benefits or detriments of a general or specific notice, this one talks about Dell upgrading the software and Dell stores the software and servers and engage in these activities. So I think that one is specific, and I think that one you can appropriately say is directed to a Dell computer operating to a Dell server because it says Dell servers there. Now, I'd like to contrast that, if we can, with the 658 patent, and I'm going to ask the court to look at, for example, the notice letter that was sent to Fujitsu. And if you look at the appendix at page 138, you'll see with respect to the 658 patent, the notice letter indicates that Fujitsu's laptops infringe, and then it specifically identifies, as an example, the Lifebook E733 notebook. And you'll note that it also indicates that that notebook operates at bullet point two with General Windows Professional or Windows Pro. Now, what the district court did in its supplemental opinion, where it was asked to clarify, it actually said that the letter provided notice to the Lifebook E733. But what it said in its discussion was, well, if the infringement arises through the operation of the 733 using anything other than Microsoft software, you can get damages for it. But if the identified product infringes because it uses Microsoft software, then you can't get damages because you didn't identify the Microsoft material in particular. And so I think that goes to your point about how far do you have to drill down. I think the law of this – I'm sorry. I'm not following you at all on this. Can you be a little bit more specific about what the patent claim is here and where in these pages of 138 and 139 you're saying that it specifically gives notice about the Microsoft product? Well, yes, Your Honor, and I think we need to start with the product. The product that would infringe the 658 claim one is not Microsoft software. The 658 claim is directed to an apparatus that has to include a memory and it has to include a processor. And so a Microsoft operating system by itself does not do that. Now, the computer that is sold by Fujitsu would have a memory, would have a processor, and when operated to perform these – when operated, as these claims discuss, would infringe. And so what the notice letter does is it identified the Lifebook E733 product as an infringing product. And we think that this court's notice law is very clear. It says in order to provide a notice of infringement, you basically have to identify a particular allegation of infringement. And, for example, in the Amstead opinion that Judge Lori wrote it, it said what you need to do is identify a specific claim, a specific patent, and a specific product or device. And in this example, the patent, the claim, and the Fujitsu E733 is specifically identified. But if we go and look at the court's opinion, and I'm going to ask to focus on the court's – Can I just stop you? I have a hard time following this. I'm looking at this, and I'm still having a hard time, and this is not the same question. I'm connecting up what kind of Microsoft product would infringe this because it's an apparatus, which is the laptop. We're selecting communication path, and then it's a memory operable to store plurality of ordered list. It doesn't sound to me like a Microsoft operating system does anything with regard to the hardware of the laptop and the memory. Well, Your Honor, the Microsoft operating system will include some functionality that's described in one example as a connection manager. And it can allow you to determine which methods of communication you're going to prioritize, whether you're going to use Wi-Fi first, whether you're going to use cellular first, whether you're going to do it through a direct Ethernet. And so when the Microsoft's operating system is placed on the computer, you can use the functionality of the operating system, part of that functionality, to create ordered lists of communication paths. Can I ask whether this makes sense technically? On 141 of the appendix, that's the process of limitation, so you've got a claim to an apparatus, which is the computer itself. It's got a memory. Well, that's all the computer. That's not Microsoft. Microsoft might be stored on the memory of the operating system, but that's not Microsoft. Then you've got a processor, and this processor, which is usually a physical thing inside the computer, but this limitation says the processor's configured to do certain things. That doesn't necessarily require software. The processor itself doesn't come configured to do certain things. It's software that may be preloaded on the computer or may be loaded after the fact, but it's the software that is added to the apparatus that achieves the functions in that limitation. So whether it's software provided by Fujitsu or software put on the operating system by Microsoft and then the product is sold, your allegation is when this particular Fujitsu laptop is sold, it's got a memory and it's got a processor that performs these functions. For your purposes, it's almost irrelevant whether Fujitsu loaded the software on that, performs it, or Microsoft does, because all you had to do, pursuant to all of our case law, is identify a product, a claim, and a patent, and you've done that. That's exactly right, Your Honor, and that's the deficiency we see with the district court's opinion is it goes to the underlying issue of the rationale or the basis of the infringement, and in fact, the reason I picked this example is… So you need to slow down, because in case you don't know it, you're going at lightning speed, you're jumping all over the place, and your argument here today is a little hard to follow, though I think I understand it. One of the problems I think you have is the district court sort of concluded, and Judge Hughes alluded to this, that you almost gave too much information in your notice, but part of the problem is by virtue of giving too much information, it almost, kind of like your argument today a little bit, becomes confusing to the person receiving the notice. So you didn't have to provide these claim charts at all, did you, to satisfy notice? Did not. But if you did provide these claim charts, and if they were completely and utterly misleading, couldn't that undermine whether you provided notice? I'm not saying they are. I'm just saying… I would say yes, but the facts matter, and in this example, you're right. The law says you're – the precedent in this court says you identify a claim, a patent, and a product. You didn't have to include these claim charts. We did not. And we would have met notice. And so now I think the issue is was the specific detail so limited and focused that somehow you took a generic identification of a product and in fact turned it into an identification of a particularly isolated example? And I would use, for example, I think the Garth opinion talks about two letters that said your trackball products infringe, and those were found to provide sufficient notice for the trackball products. That opinion also said they did not necessarily provide notice for some mouseman products, which I believe if you look at the products actually didn't include a trackball. So by identifying a particular category of products, there was to some extent an exclusion of a different type of product. Can I just ask? When Judge Hughes was asking you about the 275 patent, you pushed us to the 658. The 658 is a much stronger case for you. What about the 275? Is there a difference in the form of those particular claims such that they're not particularly apparatus claims but rather system claims? Does that impact whether or not you satisfy the notice requirement? I don't know that it makes a difference on the system. I think it's the precise wording of the notice letter. So if the notice letter, for example, specifically talks about Lenovo storing on servers, then the notice letter would be limited to servers in which Lenovo stored the update. But if the notice letter, and that's why I picked the 658 patent, more generally describes the product and doesn't say specifically only through operation of Microsoft software or only through operation of Fujitsu software, then the broad identification of the product should control and you should be able to recover damages for all variants of that product that in fact infringe regardless of what the underlying basis is. Because if you're required to provide enough detail to articulate all of the underlying basis for your infringement, what vendors might supply components that are used, what third party functionalities are involved, it's obviously going to be very difficult for that to be met in practice. Counsel, as you might see, your red light is on. You've consumed all your time. We'll give you four minutes for rebuttal and let's hear from opposing counsel. Thank you. And have you pronounced your name? Fougere. Fougere. May it please the court, Josh Fougere on behalf of Microsoft. I think Judge Hughes, Judge Lori, and Judge Moore, you all have it exactly right that what matters here is the notice that was given and the notice that was given as the district court found and as Iron Oak has not challenged on appeal, was specific to proprietary software for the defendants who got the notice. There was nothing connecting that notice as to that proprietary software to Microsoft until 2017 when a lawsuit was filed. Nothing in the record whatsoever to say that that proprietary software works in the same way as Microsoft software, that they're interchangeable. I don't understand. Are you arguing that Microsoft – I mean, part of the district court judgment was you can't sue Microsoft. Correct. And I understood him to suggest that we weren't trying to. That wasn't what this appeal was about. So are you focused on that issue? Because I think he's conceded it. Or are you somehow saying their failure to give Microsoft notice impacts whether they give the OEM's notice? No, it's not a failure to give Microsoft notice. It's what the notice provided to the OEMs. And I think the context is if you step back and think about the declaratory judgment action that Microsoft filed, and that's the only final judgment that's on appeal here. That declaratory judgment specifically said we seek judgment of non-infringement as to both Microsoft and as to Microsoft products and services. And so what the district court – and that is what mooted the underlying D.J. action and gave rise to the final judgment is the district court's decision that not only can you not recover damages from Microsoft, which, as you say, they explicitly concede, but that you cannot recover damages from the individual OEMs for alleged infringement by a Microsoft product or service. That's the specific – that's what mooted the D.J. action, and that's the order that's up on appeal now. I'm confused. I thought the order on appeal now was whether or not notice was sufficient for the OEMs for this case to proceed. Sufficient for the OEMs as to Microsoft specifically. On page 15, I think it is, in footnote 4 of their brief, they say there are other software products at issue in each of the underlying cases that are not Microsoft products. That's not what this case is about. That's not what this appeal is about. Whether they can pursue an infringement claim for damages against Dell for Dell's connection manager or Fujitsu. I don't understand. Why did they have to know what connection – they have to identify a product. They don't have to know, for example, who the supplier is of every processor in their product. I bet that the computer that Fujitsu sells involves a lot of components that were supplied by a lot of subs. Why does a patentee have to know and identify by name the subs whose products are contained within the box that is being accused of infringement? They don't necessarily have to identify them by name. But what this court has said in Amstead and continually thereafter is that you need to give a specific charge of infringement by an accused device or product. And I don't think, as Iron Oak wants to, you can decouple those two things. Well, let's start with the Fujitsu letter and page 138 to 139, which is the 658 patent. How is this deficient? There is no specific charge of infringement anywhere in here as to any Microsoft product or service. No, it's a charge against the Fujitsu laptop. And, in fact, they couldn't possibly sue a Microsoft service or product because this is an apparatus claim. They're not accusing a Microsoft apparatus. They're accusing a Fujitsu apparatus, which has a memory and a processor, a processor capable of performing certain functions, which apparently are being performed by Microsoft software that's loaded onto the Fujitsu apparatus. I don't understand. And they're not trying to get money from Microsoft. They're trying to get money from Fujitsu. So why do they have to give notice to – about Microsoft products rather than just saying, Fujitsu, you manufacture a laptop that infringes this patent? Because you need a specific charge of infringement, and it matters what that charge of infringement as to a particular product says. How specific? Can't you just – isn't our precedent just your company manufactures these products? Here are our patent claims. We've looked at this, and we think your products operate to infringe these claims. No, that's not what it is, and that's explicitly what Gart said. We are on the peace law. That's what Gart was all about. Gart was about different – Gart was about unidentified separate products. They have identified a specific laptop here and say – says that specific laptop infringes. Gart doesn't speak to this case. I respectfully disagree, but – and the argument – So you're saying that subcomponents are somehow different than the entirety of the component? No, I'm saying that what this court has said and what the statute says explicitly is that the charge has to be of the infringement. And so when you come in and say – And so the laptop – I mean we can look at the 658 claim. It's an apparatus claim, and they're saying your laptop is the apparatus that infringes, and it does all of this. Isn't that specific notice of infringement? It does all of this by way of your proprietary software. That's what the notice letter says. And what the district court – Where on the notice letter does that say as opposed to the claim chart? Because this is getting into the problem I have here, which I think would create a – I mean just be a bad policy that – of saying if you're too specific, then you haven't given notice when general notice would have provided. I don't know that that's true because at the end of the day, what this statute is getting at is what the accused infringer gets noticed of. We've been talking about this stuff. If you take away the claim charts and just have the letters, do the letters mention proprietary software anywhere? I don't think the letters would be noticed to anything without the claim charts. I don't think that there's a specific charge of infringement anywhere in those letters that would qualify under Amstead. That's because they don't identify specific products by name, like this laptop, this laptop, this laptop. No, not necessarily. It's because they don't explicitly identify any specific charge of infringement with respect to software, which is what these patents are all about. These patents are all about software. They're not about – I mean sure, they run on a generic computer, and I think Iron Oak appreciated that when they sent these letters. Can I take you to another point before I forget about it and run out of time? Sure. This case still has – all the cases against the laptop makers are still pending. Correct, as to their proprietary software. Okay, but they're not here at all. Correct. So whether or not they were given – I'm a little confused, frankly, procedurally about this case and why it's a final judgment on a lot of these issues. So Microsoft had a declaratory judgment action, which is why you're in this case. What was the declaratory judgment action? The declaratory judgment action, which is I think at 229 to 233 in the appendix, was both as to infringement or damages collected directly from Microsoft, but also as to any – Did they sue Microsoft for damages? No. Why did that – I mean why did you file a declaratory judgment when there was no suit against you on damages? Because what happened was in late 2017, and I think it was one of the last two of these suits against the computer manufacturers, it was the one against Dell. They explicitly called out for the first time in that complaint the Microsoft automatic update and connection manager, and that was what put Microsoft on notice that its products were being accused. And so then Microsoft saw that Iron Oak had filed a bunch of these other suits and filed a DJ action that said explicitly these lawsuits have placed a cloud over our products. We have – our customers are being accused in all of these different lawsuits, and so we're seeking a declaration of non-infringement as to our products and services. But you had never been sued. That's correct. So, procedurally, all that's up here is that declaratory judgment action. Yes. Honestly, now that we're sitting here talking about it, I don't understand how there's a final judgment as to whether proper notice was given to all of the actual laptop makers because those cases are still pending. They are. Wait, let me make sure I understand it. The cases are pending, but hasn't the district court ruled that those cases cannot continue on the allegation or incorporating into them any allegation that any portion of the claim limitations are being satisfied by virtue of the Microsoft software? By virtue of – that's correct. So, the cases aren't continuing against the OEMs. The OEMs now have been exempted to the extent that any of the elements of the claims are being performed by the Microsoft software. That's correct, but the cases are all continuing as to the OEMs. But only as to their proprietary software, if it is their proprietary software that performs any of the functions. That's correct. So, isn't the ruling that Microsoft can't be the basis for liability in those cases an interlocutory ruling? Well, the only judgment – In those cases because the only judgment we have is against Microsoft. You have – We don't have a final judgment that – again, they're clearly barred by that, but that's the whole point of not being able to assure interlocutory rulings until they get a final judgment on all of their claims. They could get a final judgment against whoever – all these laptop makers for the proprietary software and then appeal and say, but the district court was wrong to preclude us from getting damages for the Microsoft projects. But that – the final judgment that's on appeal here is only the final judgment from the Microsoft DJ action. That's at Appendix 14. And what – I don't really, frankly, understand why you even have an appropriate DJ action when you weren't sued or threatened with suit and all you're doing is – you didn't move to intervene, did you? We did as to Dell and HP, which was the first ones where this percolated up to actually specifically accusing Microsoft product. And we were granted a right to intervention in those cases. And then when everything was consolidated into the MDL is when Microsoft said – What was the basis for your intervention? That our proprietary software was being accused of infringement. And there were counterclaims. And there were counterclaims in the DJ action, too, saying we accused your automatic update and connection manager of infringement. Was there a motion to dismiss the DJ action, lack of case of controversy? No. There's been – the parties have been aligned on the efficiency of doing it this way from the beginning. The parties are always aligned on efficiency of getting what they consider the most important issues on appeal to us quickly and often ignore the final judgment rule. Sure. But respectfully, I think that that rule is satisfied here with respect to this final judgment in the DJ action. Because the DJ action was appropriate and because that's a final judgment. Right. It's a final judgment as to the DJ action, which sought peace as to Microsoft's products and services across the board. And that's what that Appendix 14 says. To be clear, what Appendix 14 says is they can't get judgment from the defendants total. And then in the footnote, they cite as joint defendants all of the companies, Fujitsu and Dell and everything. Right, right. So this judgment, while it may have arisen in the context of this Microsoft DJ action, this particular judgment that was issued on – at Appendix 14 extends to all of the defendants, does it not? It is – To the extent they're using Microsoft software. Right, but only by way of the declaratory judgment that Microsoft sought, which was both that – and this is at Appendix 233 – that neither Microsoft nor its products, services, or technology have infringed directly or indirectly. So the decision by the district court – Let me be clear about one thing. Sure. If we were to affirm that the DJ against Microsoft was properly dismissed for failure to have provided Microsoft with timely notice of infringement, but if the entire briefing in this case is focused on the OEMs… Right. How do we not speak to that, and won't that leave the district court at sea potentially on the wrong course if, for example, I think there was sufficient notice for the OEMs? Because the declaratory judgment that was – what the DJ says is that because Iron Oak cannot recover damages from both Microsoft or from the OEMs for infringement by Microsoft's products and services, and it was both of those that were a part of – Here's my problem. I'm with you. There was no notice to Microsoft. Right. So they can't recover damages from Microsoft. Right. They don't appear to be seeking them now. If they were at some point, that's fine. We can affirm and say no notice to Microsoft because they didn't try to get any to you. But the judgment as to all those laptop makers seems like it's not a final judgment because you agree that those cases are still ongoing as to other issues. Did anybody ask for a Rule 54B judgment on this? Not that I'm aware of, no. I mean this case is procedurally a mess. It is unorthodox for sure. Well, neither of you were very helpful in explaining why this is a final judgment appropriate for appeal as to the laptop makers. I think the reason it's a final judgment as to everybody is that the declaratory judgment that Microsoft sought and that was mooted by the order as to both the laptop makers— But the only final judgment here is that no – is against Microsoft. Right. And so we've affirmed. We're only affirming as to Microsoft. So here's another way to think. The piece as to Microsoft, there is still a part of the declaratory judgment that seeks judgment of non-infringement as to Microsoft's products and services. And it's that piece that had to be combined with the other piece that mooted the whole thing. If you affirm as to the ability to collect images from Microsoft directly, that doesn't moot the entirety of the DJ action. And I think that's what the parties were – and the district court were doing at Appendix 14 in issuing the final judgment. I see my time is up. I'm happy to keep going. I know we've – I would – I'm giving your opponent a little extra time. Do you want a final sentence or two to sum up? Sure. I would just reiterate that at the end of the day, 287 notice is a doctrine that focuses on the patentees and what the patentees does. So the patentee here provided notice as to a particular piece of proprietary software and nothing else. That's what the district court found. They haven't disputed that on appeal, and there's no record evidence whatsoever as to how anybody would have known that Microsoft products or services were at issue in 2014. So we would respectfully urge the court to affirm. Thank you, counsel. Thank you. Mr. McLaughlin, you have some rebuttal time if you need to. Yes, thank you, Your Honor. I want to address two points. First, on the notice issue, this is all about notice to the OEMs and whether or not they can be liable for damages for products that use Microsoft operating systems that result in some of the functionality in the claims. That is the issue on appeal. And I think, Judge Moore, you're right that the judge's decision below addresses that issue and says conclusively that you cannot collect damages from any of the defendants if they're infringed. Judge Hughes' point is a good one, and I don't know what to do with it, which is, but there remains other issues still pending between the OEMs and the patentee in this case that are unresolved. So normally when a judge resolves half of a case or half of the product claims but not the others, we don't have jurisdiction. So what do we do about that? Well, I think there is jurisdiction, and the reason—  If Microsoft wasn't in this case but the laptop makers had moved for partial summary judgment saying, okay, maybe as to our proprietary software we got notice but not as to Microsoft, and the judge had granted partial summary judgment and said, yes, you can't proceed again for damages against Microsoft, but you can on the others. Yes. That order is not immediately appealable, right? I would agree with that in the absence of certification, yes. Right, and none of that was done here? No. And there was no 54B? No, Your Honor. Okay. So tell me how a declaratory judgment action by Microsoft somehow makes the decision against the other parties where you can see cases are still ongoing final as to an issue. Certainly, Your Honor.  Microsoft filed a declaratory judgment, which, of course, has to have some underlying real dispute where the party's rights can be impacted by a decision. And if you look at the declaratory judgment action that Microsoft filed, a large part of it—in fact, the only important part of it was this issue of whether customers who use Microsoft software infringe the patent and are liable to damages because it was that damage liability— Well, that's the only final judgment, but the final judgment as to Microsoft is based on a particular issue, and that issue is whether or not the—because if the court's decision— Sure, that ruling is going to be conclusively held against you in the cases ongoing against the laptop, and it would be supremely inefficient to have to make you go through all that and then come up here and say the notice was wrong or not, but that's the point of the final judgment rule. And I'm still confused as to how the declaratory judgment action by Microsoft somehow turns the cases that are still ongoing against the laptop makers into cases that received a final judgment appropriate for appeal. It seems like it was a partial summary judgment that's an interlocutory ruling that has to wait until the final judgment in each of those cases, no matter how efficient. I would say, Your Honor, if that was the decision, then that would mean that in the underlying OEM cases, there is still the possibility of liability accruing to Microsoft by virtue of their indemnity agreements. But that doesn't matter, though. I mean, whether Microsoft may end up liable by virtue of their indemnity agreements, that's not the question. Well, I think it's that – That's a contract dispute between the laptop makers and Microsoft. You're not suing Microsoft for damages. And so that – Well, you did because you counterclaimed. We did not sue them for damages. I thought you counterclaimed. But we did not sue them for damages. We've never sought damages. That was never an issue. And the counterclaim was not directed to their operating systems in general. I mean, because I think that it would be ridiculously inefficient to send this back without resolving this OEM notice question. Is there anything, given that this was an MDL, that could suggest somehow something different about it? I don't know. Because I'm listening carefully to what Judge Hughes is questioning you about, and it really does sound difficult. Well, what about sending you back down to get it certified and holding the case while that happens? I'd advance maybe two things. One is a question of whether you can effectively certify in this circumstance to address the issue. And the other issue I would raise is focusing on the declaratory judgment and why I believe this is a final judgment. In that case, it has to be resolved. That declaratory judgment sought to eliminate Microsoft's liability under the IRM patents either directly or derivatively. And I think that there are potential derivative liabilities. Let me be clear and make sure I understand you. You did not sue Microsoft under any kind of contributory or inducement credential. So the case in controversy between you with regard to Microsoft is only because of their declaratory judgment action in whatever counterclaim you filed. With respect to this issue, yes, but I think that's sufficient to maintain the declaratory judgment jurisdiction. When you look at the requirements for – But again, it's only as to Microsoft. And so if we affirm and say Microsoft obviously did not get sufficient notice, they can't be liable for damages to you, that conclusively solves that issue. It doesn't conclusively solve the issue of whether the underlying laptop makers got notice or not in the declaratory judgment action. Look, I am entirely on board that it would be incredibly inefficient not to resolve this, but we have the final judgment rules for reasons. And I don't really see a path forward here in reaching the cases with the laptop makers via the declaratory judgment action because I think it's pretty clear that if we didn't have the declaratory judgment action and we only had the partial ruling about Microsoft, we wouldn't be here. If there was not – I agree, but the reason I believe it's appropriate for the court to address that issue is if this court was to vacate, for example, this decision, then the basis for the dismissal of the declaratory judgment action is gone because at that time there's still a controversy between the parties as to Microsoft's liability resulting from infringement of these patents. Because at that point there would still be Microsoft claiming it has rights that are potentially affected by the resolution of this particular issue. The decision that the court made, the reason it was a final judgment – Is the possible – they're in the indemnification agreements. Is that a basis for declaratory judgment action jurisdiction? I believe that it is. We're not threatening to sue them. No. I don't know the answer to this. No, and I would say I think Microsoft thought it was when it brought the action. We thought it was appropriate because there was enough of a concrete issue to be appropriately resolved, and the court accepted the jurisdiction. So I think to your question, is this indemnification liability sufficient to give rise to a declaratory judgment case or controversy, I think the answer is yes, and that's why this is an appropriate final judgment. Thank you. I think we've explored the issues, and we'll take the case under advisement.